73191. CONLEY v. THE STATE.
(350 SE2d 45)

BIRDSONG, Presiding Judge.

Larry Joe Conley was convicted of introducing (trafficking) more than 28 grams of a substance containing cocaine into the state of Georgia. He was sentenced to serve ten years and fined $100,000. Conley brings this appeal enumerating a single alleged error, the validity of an airport search. *Held*:

In passing upon the sufficiency of the evidence to support a verdict, an appellate court is to afford the evidence the view which is most favorable to the State, for every inference is in favor of the verdict. *Taylor v. State*, 138 Ga. App. 95, 96 (225 SE2d 508). Viewed from that perspective, the trial court at a bench trial was warranted in finding the following occurrences. On August 8, 1985, three DEA officials observed Conley deplane in Atlanta from a flight originating in Fort Lauderdale, Florida, a known point of origin for drug introduction. Conley was observed by all three officers to be wearing casual wear including an open neck shirt, blue jeans and a pair of boots. It was readily apparent to all three officers that the left trouser leg was bulging on the outside whereas the right trouser leg seemed normal. Two of the officers followed Conley from the point of deplaning to the gate where Conley was to take a connecting flight to St. Louis. The officers followed behind Conley and observed both boots as Conley walked. It was readily apparent that the right boot moved in a manner consistent with the foot movement of walking. It also was obvious

that the left boot did not move the same and appeared to be constricted as if by something stuffed into the left boot thus restricting free movement of the left boot.

When Conley arrived at the gate for the St. Louis flight, he was approached by one of the two officers and the following conversation occurred. The officer stated words to the effect: "Excuse me, I am a police officer" at the same time producing his credentials. The officer then said: "May I talk to you for a few minutes?" Conley responded: "Yes." The officer then asked: "May I see your airline ticket, please." Conley displayed his ticket which was a round-trip ticket in Conley's own name from St. Louis through Atlanta to Fort Lauderdale and return. Conley identified himself by his correct name and showed the officer a driver's license also bearing the correct name. The officer then stated: "Mr. Conley, we're police officers. We're looking for drugs and narcotics being brought through the airport. I'm going to ask you for a few minutes of your time and ask would you mind or if you would allow me to look into your boot. It may be the way that your pants are pushing out, but it appears to me that you have something concealed in one of them." Conley responded to the request: "Sure." He was advised that the examination of the boots could be conducted in the gate area or in a more private place as Conley desired. Conley suggested a more private location. The two officers and Conley proceeded to a ramp which was out of the concourse area. The officer then asked: "Mr. Conley, do you mind pulling up your pants over your boots, please?" Conley pulled the right pants leg up over the top of the right boot and the officer felt in the top of the right boot and found nothing. Conley then pulled the left pants leg up to a point below the top of the left boot. The officer then pressed against the outside of the left boot and felt some object other than the boot or Conley's leg. The officer then lifted the pants leg above the top of the left boot and observed a cloth bag normally used to package a well-known brand of whiskey. The officer pushed his finger into the bag and felt a powdery substance which he then believed to be cocaine. He opened the cloth bag and observed what appeared to be cocaine. Conley was placed under arrest and subsequent analysis of the contents of the bag verified the substance to be cocaine.

Conley disputes the words of the officer, of himself and even of the location of the bag of cocaine, though he does not dispute the possession and introduction of the cocaine into the Atlanta Airport. His dispute however does not change the issue presented by the facts available to the court on the suppression hearing. The facts disclose a valid police-citizen encounter followed by Conley's consent to the officer's examination of Conley's footwear. See *Allen v. State*, 172 Ga. App. 663, 666 (4) (324 SE2d 521); *McAdoo v. State*, 164 Ga. App. 23, 28 (1) (295 SE2d 114). Thus, the appeal presents only a question of

fact as to whether there was a valid consent to search. This was a matter exclusively within the province of the factfinder, the trial court. *State v. Floyd*, 161 Ga. App. 49, 50 (289 SE2d 8). After a full exposure of the facts, the trial court found consent for the search of Conley's boots. That finding must be accepted by this court unless clearly erroneous. *Williams v. State*, 251 Ga. 749, 792 (312 SE2d 40). We find competent and sufficient evidence to support the trial court's conclusion of voluntariness. A search with consent legally obtained continues throughout the duration of the search unless revoked. *Bell v. State*, 162 Ga. App. 79, 81 (290 SE2d 187). There is no evidence that Conley ever denied the officers permission to look into his boots after first giving them such permission. There was no error by the trial court in its denial of the motion to suppress.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 23, 1986.

*Ronald W. Horton*, for appellant.

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.