A89A1345. AMATO v. THE STATE.
(388 SE2d 54)

BANKE, Presiding Judge.

On appeal from his conviction of trafficking in cocaine, the appellant contends that the trial court erred in denying his motion to suppress the contraband on which his conviction was based.

The appellant was stopped by trooper Rick Ogden of the Georgia State Patrol for traveling six miles per hour in excess of the posted speed limit on I-95 in Glynn County, Georgia. At the officer's request, the appellant produced his Colorado driver's license, as well as a New York vehicle registration receipt in the name of Clara Amato. He explained that he had borrowed the car from his mother and was on his way to New York to return it. The patrolman issued the appellant a "courtesy warning" for speeding, returned his license and registration to him, and asked him "if he had any objection to opening the trunk of his car." The appellant responded that he did not and opened the trunk. Without explaining the purpose of his investigation, the patrolman then asked the appellant for permission to "look in" a cooler and several other items contained in the trunk, and again the appellant agreed. However, no contraband was found inside these items. The patrolman testified that he thereupon asked the appellant "if he had any objection to [his] looking in the passenger compartment, and the things in the passenger compartment." The appellant again responded that he had no objection and stood at the back of the car at the patrolman's request while the latter opened the driver's door and looked inside. Again finding nothing of interest, the patrolman then removed a pen from his pocket and placed it inside a vent located on the door frame. Upon doing so, he "felt something inside the vent moving around," whereupon he obtained a screwdriver from his patrol car and removed the screws securing the vent cover. However, the cover continued to adhere to the door frame, so the patrolman pried it off with the screwdriver, breaking it. When asked at the suppression hearing what he had expected to find in the vent, the patrolman stated, "Well, I really had no idea. Without getting a closer look, I

really wasn't sure what was in there."

After pulling off the vent cover, the patrolman was able to see a package inside the opening which he suspected might contain cocaine. On the basis of this belief, he immediately arrested the appellant for trafficking in cocaine, locked him in the patrol car, and administered the *Miranda* warnings to him. In order to gain access to the package inside the vent, the patrolman ultimately had to remove the lower portion of the back seat of the automobile and pull out some insulation.

The appellant denied that he had given the patrolman permission to "search" the passenger compartment of the vehicle, testifying that he had only been asked and had only agreed to allow him to "look in[side]" the vehicle, not to look through the "things" contained therein. The appellant further testified that upon observing the patrolman obtain the screwdriver, he had told him, "I don't want you taking nothing apart or breaking anything," and that the officer had responded by telling him to "go stand behind the car and stay there." While the patrolman admitted that the appellant had told him not to "tear [his] car up," he asserted that this admonition had come only after he had already removed the vent cover. *Held:*

1. The appellant contends that the trial court erred in denying his motion to suppress the contraband seized from the vehicle because the scope of the search exceeded the consent given. We agree. Even accepting the patrolman's testimony that he asked for and received permission to look in "the things in the passenger compartment," he clearly did not ask for or receive consent from the appellant to disassemble the vehicle. Compare *Steward v. State*, 182 Ga. App. 659 (356 SE2d 890) (1987). Where the validity of a search is dependent upon the consent of the defendant and the evidence shows without dispute that the scope of the search exceeded the scope of the consent, the search is unlawful. See *State v. Diaz*, 191 Ga. App. 830 (383 SE2d 195) (1989). The state having failed to establish in the present case that the removal of the vent cover inside the appellant's vehicle was supported either by probable cause or by the appellant's consent, we hold that the motion to suppress should have been granted. See generally *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865) (1984); OCGA § 17-5-30.

2. In view of the foregoing, we do not reach the merits of the appellant's remaining enumeration of error.

*Judgment reversed. Sognier, J., concurs. Pope, J., concurs specially.*

POPE, Judge.

I agree that the search in this case exceeded the scope of the consent given by the driver. But the practical problem for the patrolman

is how far the consent given by the driver of an automobile extends. The answer, as reflected in this and other opinions (see *State v. Diaz*, 191 Ga. App. 830 (383 SE2d 195) (1989); *Love v. State*, 144 Ga. App. 728 (242 SE2d 278) (1978)), is that consent extends only so far as it was expressly given. When an officer simply requests permission to "look in" a vehicle without explaining his intent to seize and examine the contents of any items found therein, it cannot be said that he has sought consent for a full-scale search. See *State v. Diaz*, supra at (2). When an officer seeks consent to search he should avoid use of euphemistic or ambiguous terms such as "look in." The language of the standard written consent form issued by the Georgia Department of Public Safety (Form 1193) clearly informs the signatory that he is consenting to "a complete search" of the vehicle and that he is granting permission to the officer "to take from the . . . vehicle any property or contraband that is present, which violates State or Federal law." Likewise, a request for oral consent should also convey the officer's intent to search the vehicle and its contents for illegal substances or other evidence, as may fit the case, and to seize and examine the items found.

DECIDED NOVEMBER 9, 1989.

*Grayson P. Lane*, for appellant.
*Glenn Thomas, Jr., District Attorney, Clifford K. Higgins, Assistant District Attorney*, for appellee.